### In re CUSHMAN.

(Supreme Court, Appellate Division, First Department. March 17, 1916.)

ATTORNEY AND CLIENT ⬅➡36(1)—CENSURING ATTORNEY—GROUNDS—STATUTE.

  Under the Judiciary Law (Consol. Laws, c. 30) § 88, subd. 2, as amended by Laws 1913, c. 720, providing that the Supreme Court shall have control over attorneys, and that the Appellate Division is authorized to censure,

suspend, or remove from office any attorney guilty of professional misconduct, malpractice, fraud, deceit, crime, or misdemeanor, or any conduct prejudicial to the administration of justice, the Appellate Division was authorized to censure an attorney, who, when another attorney conducting litigation died, agreed to pay the partner of such other attorney and the latter's widow one-third each of the 50 per cent. contingent fee which he might realize by continuing the litigation, but who, after receiving the money, failed to do so, merely giving worthless checks for the amount.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 49; Dec. Dig. ☞36(1).]

Proceeding by the Association of the Bar of the City of New York to discipline Avery F. Cushman, an attorney, for unprofessional conduct. Application on report of the official referee. Respondent censured.

Argued before CLARKE, P. J., and LAUGHLIN, SCOTT, SMITH, and PAGE, JJ.

Einar Chrystie, of New York City (Langdon P. Marvin, of New York City, of counsel), for petitioner.

Avery F. Cushman, of New York City, pro se.

CLARKE, P. J. This is the usual proceeding instituted by the Association of the Bar of the City of New York to discipline an attorney for unprofessional conduct. There is no dispute as to the facts as reported by the official referee.

Respondent was admitted to the bar in September, 1886. Mrs. Isabella Foster, as administratrix of the estate of Albert J. Foster, deceased, brought an action in the United States Court for the Eastern District of New York against Bucknall Steamship Lines, Limited, for damages on account of the death of her husband. In that case Alfred C. Cowan was the attorney of record for the plaintiff, under an agreement that he should receive as his compensation a sum equal to one-half of the amount received by judgment or settlement, in addition to his taxable costs and disbursements. There were two trials, and the complaint was dismissed upon the second trial, which on appeal was reversed by the United States Circuit Court of Appeals. 206 Fed. 415, 124 C. C. A. 297. Mr. Cowan consulted the respondent with respect to this appeal and the respondent prepared the papers thereon. Prior to the new trial ordered, and on September 8, 1913, Mr. Cowan died. Thereafter Mrs. Cowan conferred with the respondent upon the terms upon which he would divide with her any fees which he should obtain in cases in which he should be substituted for Mr. Cowan, and she testified that respondent said that, if she would use her influence to get Mrs. Foster to consent to substitution in her litigation, he would divide the attorney's fee with Mrs. Cowan. Under date of September 26, 1913, he wrote to Mrs. Cowan:

"With reference to the cases that Mr. Cowan had at the time of death, and in which he had a contingent agreement with the clients for 50 per cent. of the recovery and disbursements, I would say that in all cases in which I am substituted for the plaintiff and in which there is a recovery, so that the contingent fee is paid, I will divide the contingent fee with you equally, you, of course, to be paid any disbursements that Mr. Cowan had laid out during his lifetime, in addition thereto, and if in any case the contingent fee

is not 50 per cent. it is understood that it will be divided equally, and I understand that you on your part will do everything in your power to locate witnesses and assist as far as you can in the preparation of the trial of these cases."

On September 29, 1913, respondent made an agreement with Mrs. Foster, the plaintiff in the action, on the same conditions as the former agreement with Mr. Cowan as to fees, and on the same day wrote to Col. W. C. Beecher, who had been counsel in the case, that he had been substituted, and said:

"I do not know, as Mr. Cowan never told me nor his wife, what arrangements he had with you in these and other cases. * * * I wish you would continue in the case and assist in the trial, because I believe there is a good chance now of getting a substantial verdict. I am protecting Mrs. Cowan's interest in this case, as well as having an interest myself."

The trial resulted in a verdict for the plaintiff, rendered on March 30, 1914, of $9,000. Mr. Beecher acted as trial counsel, and the respondent was attorney of record. Subsequently a settlement was arranged on the payment of $8,000. This sum was paid to the respondent August 8, 1914, in three checks, one to the order of Mrs. Foster, as administratrix, for $4,000, and the other two to the order of the respondent, one for $1,500 and the other for $2,500. Respondent subsequently paid to Mrs. Foster, the plaintiff, and to her children, her share, amounting to about $4,000, and there is no dispute as to this.

Respondent cashed at once and used for his own purposes the check for $1,500, and deposited in his bank the check for $2,500. From time to time after the respondent had received these sums, Mr. Beecher demanded from him the payment of Mrs. Cowan's share. Apparently no definite agreement had been made as to how much should be paid to Mr. Beecher for his services. On November 6, 1914, Mr. Beecher, Mrs. Cowan, and the respondent met and agreed that the amount of the fee—that is, $4,000, less disbursements—should be divided in equal thirds among them. Subsequently respondent paid to Mrs. Cowan and Mr. Beecher each the sum of $500. On November 23, 1914, Mrs. Cowan, Mr. Beecher, and respondent met, and the respondent drew up a statement showing the amount received as one-half of the settlement (that is, $4,000), the disbursements incurred, and a balance due to Mrs. Cowan and to Mr. Beecher each in the sum of $803.18, and he delivered to Mrs. Cowan and to Mr. Beecher each a check in said sum, checks being postdated December 1, 1914. These checks were deposited on December 1st, but were returned, marked "Not sufficient funds." Early in December respondent gave to Mr. Beecher two other checks, one to the order of Mrs. Cowan and the other to the order of Mr. Beecher, postdated December 7, 1914, each for the sum of $803.18. Upon presentation the checks were reported "No good," and neither of them have ever been paid.

The respondent admits that when the first checks were given, when they were dated, when the second checks were given, and when they were dated, he did not have, and has never since had, sufficient funds for the payment thereof, and that he had no reasonable expectation of

having the funds at the date put by him upon said checks. His sole defense is that Mrs. Cowan, as the widow of the former attorney, had no legal lien on the papers involved in his action for services, and as between himself and Mrs. Cowan and Mr. Beecher the relation of attorney and client did not exist, and that for that reason the money which should have been, but was not, paid on his dishonored checks was his own money; that neither Mrs. Cowan nor Colonel Beecher had a legal claim to it as a trust fund, and that each of them has but a personal claim against him—that is to say, that the relation between him and them is simply that of debtor and creditor, and therefore he is not amenable to a disciplinary proceeding.

This claim is based upon an erroneous conception of the relation in which this court stands to its officers. Section 88, paragraph 2, of the Judiciary Law, as amended by Laws 1913, c. 720, provides:

"The Supreme Court shall have power and control over attorneys and counselors at law, and the Appellate Division of the Supreme Court in each department is authorized to censure, suspend from practice or remove from office any attorney and counselor at law admitted to practice as such who is guilty of professional misconduct, malpractice, fraud, deceit, crime or misdemeanor, or any conduct prejudicial to the administration of justice. * * * "

The respondent was the attorney of record of Mrs. Foster, and as such received the $8,000, which was the amount of the settlement in the action in which she was plaintiff. He has settled with her in accordance with his agreement, and his relations to her as his client are not in question. But his relations to Mrs. Cowan, the widow of the former attorney of record, whose place he took and whose work he completed, grew out of his position as an attorney at law, as did his relations with Col. Beecher, who was the trial counsel in the case. With them he made agreements, as attorney at law, for the division of such sums as should come to him from his professional relations to the case as attorney of record, recognizing, it would seem, a moral obligation to the widow of the deceased, former attorney of record, who had through two trials and a successful appeal conducted the litigation, and a professional obligation to the trial counsel. He so far carried out the agreement, into which he had voluntarily entered, as to make a division of his fees, and twice pretended to consummate such agreement by giving worthless checks, known by him to be worthless at the time he emitted them, having disposed of the moneys, which he had received, for his own purposes.

While it is quite true that neither Mrs. Cowan nor Mr. Beecher was his client, and it is true, in a technical sense, that the amount of his fees, which he purported to divide, and which were represented by the two checks given to each of them, was not a trust fund of which he was trustee and they the cestuis que trustent, nevertheless the whole transaction grew out of and was dependent upon his office of attorney at law. The statute cited is a broad one, and the claim that the conduct of the respondent, outlined above and stated in full in the report of the official referee, which we adopt, is not professional misconduct and conduct prejudicial to the administration of justice, is one to which we cannot accede. As the referee has well stated:

"In his capacity as attorney for the plaintiff and under the arrangement made with her he had received the sum of $4,000 as his fee, while he was under an agreement with Mrs. Cowan to pay her one-half of such fee. The use of her half, and subsequently of the two-thirds, which by a subsequent agreement he had promised to divide between Mrs. Cowan and Mr. Beecher, less the payment of $500 to each of them on account and the amount of some disbursements, and the giving to Mrs. Cowan and to Mr. Beecher on two separate occasions checks for $803.18 in settlement of the balance remaining due to each of them, when at the time of giving these checks he did not have funds to meet them, nor any reasonable expectation to obtain such funds, and his failure to the present time to pay the said checks, constitute in my judgment sufficient professional misconduct and conduct prejudicial to the administration of justice to render the respondent amenable to disciplinary action."

The respondent in his attitude misconcieves the standards of his profession and the rule of conduct which this court requires of its attorneys. He suggests no mitigating circumstances, but stands upon the legal position that the court has no power to pass upon his conduct in the premises.

In the opinion of this court he should be censured. All concur.